**"O"**

**JS-6**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK A. ANDERSON,<br><br>             Plaintiff,<br><br>      v.<br><br>UNITED HEALTH GROUP;<br>PACIFICARE HEALTH SYSTEMS,<br>INC.; UNITED HEALTH GROUP<br>BENEFITS REVIEW COMMITTEE,<br>and Does 1-50, inclusive,<br><br>             Defendants.<br>_____ | CASE NO. SACV 07-0965 AG (MLGx)<br><br>ORDER AFFIRMING<br>ADMINISTRATOR'S DENIAL OF<br>LONG TERM DISABILITY<br>BENEFITS |

## INTRODUCTION

Plaintiff Patrick Anderson ("Plaintiff") was an employee of PacifiCare Health Systems, Inc. ("PacifiCare"), when PacifiCare was acquired by United Health Group in December 2005. Plaintiff claims that, after the merger, his job duties changed substantially, and he quit. He then claims that, after quitting, he should have received 52 weeks of severance benefits, but the United Health Group Benefits Review Committee ("Review Committee") denied his claim. He appealed that denial and lost. He then filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1001, et seq., for his severance benefits. The

Court hereby AFFIRMS the Review Committee's decision to deny benefits to Plaintiff.

**FINDINGS OF FACT**

The Court makes these findings of fact, including any findings of fact found in the Conclusions of Law.

Plaintiff was an employee eligible for PacifiCare's Severance Plan ("the Plan"). The Plan entitled him to severance benefits if PacifiCare consummated a merger with another company and if Plaintiff then voluntarily quit his position for "good cause." According to the Plan:

> 'Good cause' shall be deemed to exist if an Employee voluntarily terminates his employment with an Employer for any of the following reasons:
>
> a.  Without Employee's express prior written consent, Employee:
>
> (I)  is assigned duties materially inconsistent with Employee's position, duties, responsibilities, or status with an Employer which substantially varies from that which existed immediately prior to the Change of Control.

(Plan, p.6.)

In December 2005, PacifiCare merged with United Health Group. On June 8, 2006, Plaintiff quit. He submitted a claim for severance benefits to United Health Group's Benefit Review Committee ("Review Committee"), arguing that his duties and responsibilities post-merger were materially inconsistent with his pre-merger duties and responsibilities.

The Review Committee was made up of five employees of United Health Group. They received and investigated plaintiff's claim, interviewed witnesses, solicited information from Plaintiff, deliberated about the evidence before them, and determined that there was not "good cause" for Plaintiff's resignation under the Plan. Documents in the Administrative Record show that there was reasonable basis for that determination. (*See* Administrative Record at Tab 5, D0062-0066, D0131-0132, Tab 7, D0426.) The Review Committee denied Plaintiff's claim.

Plaintiff appealed the denial to the Review Committee, which denied the appeal.

**CONCLUSIONS OF LAW**

The Court makes these conclusions of law, including any conclusions of law found in the Findings of Fact.

### 1. THE REVIEW COMMITTEE'S DENIAL OF BENEFITS IS REVIEWED FOR ABUSE OF DISCRETION

This case requires examination of the standard of review to be applied to the Review Committee's denial of Plaintiff's claim for benefits. The review of a plan administrator's denial of benefits is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, No. 05-56824, 2008 U.S. App. LEXIS 334, 2008 WL 80704, at *2 (9th Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). Where the plan grants such discretionary authority, the administrator's decision is reviewed for abuse of discretion, unless the administrator so "utterly fails to follow applicable procedures" that "the administrator is not, in fact, exercising discretionary powers." *See id.*; *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006). If the administrator utterly fails to follow the procedures applicable to the discretionary analysis, the standard of review reverts to *de novo*. *Id.*

The parties agree that the Plan in this case gave the Review Committee discretionary authority, which would generally merit an abuse of discretion standard of review. But Plaintiff argues that the Review Committee so utterly failed to follow applicable review procedures that the Court should review its decision *de novo*. The Court disagrees. "[A]n administrator's failure to comply with . . . procedural requirements ordinarily does not alter the standard of review." *Abatie*, 458 F.3d at 971. Only when "an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA" should a court review a discretionary

decision *de novo. Id.* Plaintiff's allegations of procedural irregularities do not amount to "wholesale and flagrant violations." Accordingly, the Court reviews the Review Committee's denial of benefits for abuse of discretion.

An ERISA plan administrator's decision to deny benefits is an abuse of discretion "only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005); s*ee also Taft v. Equitable Life Assurance*, 9 F.3d 1469, 1473 (9th Cir. 1994). Under the abuse of discretion standard, "even decisions contrary to evidence in the record do not necessarily amount to an abuse of discretion," so long as there is some reasonable basis for the decision. *See Taft*, 9 F.3d at 1473; *see also Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1417 (9th Cir. 1991).

## 2. THE ABUSE OF DISCRETION STANDARD IS NOT TEMPERED BY THE EXISTENCE OF A CONFLICT OF INTEREST

The abuse of discretion standard does not end the Court's inquiry regarding the appropriate standard of review. In ERISA benefits cases, the precise nature of the abuse of discretion standard varies depending on the existence and extent of a conflict of interest. *See Abatie*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (holding that a court's abuse of discretion review should be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record.")

The most common conflict of interest situation in an ERISA case is where "an insurer acts as both the plan administrator and the funding source for benefits." *Id.* at 965. This is known as a "structural conflict of interest." *Id*. at 965-66 (noting that in such a situation the administrator's responsibility to see that those deserving benefits receive them is in inherent conflict with the desire to maximize profits by paying as little in benefits as possible). A structural conflict of interest, "even if merely formal and unaccompanied by indicia of bad faith or self-dealing, ought to have some effect on judicial review." *Id.* at 966. A structural conflict

of interest should have even more effect on judicial review when accompanied by evidence of the plan administrator's bad faith. As explained by *Abatie*:

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id*. at 968-69 (citations omitted).

The parties agree that a structural conflict of interest existed in this case, because "the members of the Committee were employed by the company that would necessarily fund any benefit award." (Defendant's Proposed Findings of Fact and Conclusions of Law ¶ 23.) The parties disagree, however, over whether there was any additional evidence of the Benefit Committee's bad faith.

Plaintiff argues that the Review Committee's bad faith is evidenced by (1) an interviewer's failure to record and submit allegedly pro-Plaintiff statements made by Fritz Wilhelm; (2) the Review Committee's failure to conduct an additional investigation when it "was informed that three witnesses stated that the record was incomplete and contradictory as to its facts," (Plaintiff's Trial Brief 9:15-18); and (3) the fact that large portions of the record were redacted. The Court will address these arguments in turn.

Plaintiff has submitted a declaration by Fritz Wilhelm, which states that he was interviewed regarding his work relationship with Plaintiff, and that the interviewer's notes have been provided to him in connection with this litigation. (Wilhelm Declaration ¶¶ 2-3.) Mr. Wilhelm states that the notes "do not include a great deal of what was discussed during that interview." (*Id*. ¶ 3.) The topics he mentions that were discussed but not

5

1  recorded in the interviewer's notes were topics that would have been helpful to Plaintiff's
2  claim. (*See id*. ¶¶ 4-6.)  Mr. Wilhelm further states that the interviewer seemed interested
3  only in topics that would have been detrimental to Plaintiff's claim. (*See id.* ¶ 6 ("Mr.
4  Sanchez, however, seemed to be more interested in reaffirming his point that work still
5  existed, but not necessarily the specific context of the work.").)  Lastly, Mr. Wilhelm
6  states that the interviewer concluded the interview by saying, "Thank you I've got what I
7  needed." (*Id.* ¶ 7.)

8  Included in the Administrative Record is a document that Defendant identifies as
9  the notes Danny Sanchez took when he interviewed Mr. Wilhelm.  The document is
10  handwritten, and not lengthy.  But the notes on the document indicate that Mr. Sanchez
11  asked Mr. Wilhelm about Plaintiff's duties, recorded quotes attributable to Mr. Wilhelm,
12  and, significantly, wrote down a quote from Mr. Wilhelm that would be supportive of
13  Plaintiff's case.  This shows that Mr. Sanchez's interview was not unbalanced.  Further,
14  Defendant argues that Mr. Wilhelm was Plaintiff's employee, and had only started work
15  with the company a few months before the merger occurred.  The Court finds it more
16  likely that Mr. Wilhelm's lack of knowledge, not Mr. Sanchez's bias, accounted for the
17  brevity of Mr. Sanchez's notes.  The Court finds that Mr. Wilhelm's declaration is not
18  evidence of the Review Committee's bad faith.

19  Second, Plaintiff argues that, in his notice of appeal, he notified the Review Board
20  of three witnesses who stated that the record was incomplete, but that the Review Board
21  did not conduct any additional investigation. (Plaintiff's Opening Brief 9:15018.)
22  Plaintiff does not describe who the "three witnesses" are and the Court sees only two such
23  witnesses referenced in the notice of appeal.  Those witnesses are Mr. Wilhelm and Jake
24  Oner.  But Mr. Wilhelm's statements, as discussed above, do not show bad faith or that
25  additional investigation needed to be taken.  And the section in the notice of appeal
26  discussing Mr. Oner does not say that he thought the record was incomplete.  Instead, it
27  appears to merely repeat his earlier statements.  Thus, this argument does not show the
28  Review Committee's bad faith.

Finally, Plaintiff argues that large portions of the Administrative Record have been redacted, and that proves the Review Committee's sinister motives.  Defendant responds that those portions were redacted because they related to other claimants.  The Court finds this credible.  Accordingly, the redactions are not evidence of the Review Committee's bad faith.

Because Plaintiff has not presented evidence that the Review Committee's conflict of interest went beyond the "structural" conflict, the Court brings a low level of skepticism to its application of the abuse of discretion standard.  *See Abatie*, 458 F.3d at 968.

## 3. THE REVIEW COMMITTEE DID NOT ABUSE ITS DISCRETION IN DENYING SEVERANCE BENEFITS

After reviewing the evidence in the Administrative Record, the Court finds that the Review Committee did not abuse its discretion in denying Plaintiff severance benefits. The evidence shows that the Review Committee provided a detailed explanation in writing for its decision, did not construe provisions of the plan in a way that conflicted with the plain language of the plan, and based its decision on substantial evidence in the Administrative Record.

Accordingly, the Review Committee's denial of severance benefits is AFFIRMED.

**DISPOSITION**

Defense counsel is directed to prepare the judgment and serve it on Plaintiff by October 17, 2008.  Plaintiff shall have 14 days from the date of service of the proposed judgment to object to the proposed judgment.  If no objection is received within 14 days,

the judgment will be entered immediately, and Federal Rule of Civil Procedure 52(b) will apply on entry of the judgment.

IT IS SO ORDERED.

DATED: September 30, 2008

_____
Andrew J. Guilford
United States District Judge